IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

US GATES INTERNATIONAL, LLC,    )
                                )
        Plaintiff,              )
                                )
        v.                      )    1:10cv32 (JCC/JFA)
                                )
LIGHT STAR TRAVEL AGENCY,       )
INC., *et al.*,                 )
                                )
        Defendants.            )

# **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a bench trial
pursuant to Plaintiff US Gates International, LLC, d/b/a Light
Star Travel's Complaint of January 11, 2010 [Dkt. 1], and
Defendants Light Star Travel Agency, Inc., Fawaz F. Mushtaha,
and Musab Mushtaha's Counterclaim of February 26, 2010 [Dkt.
12].

Plaintiff alleges trademark infringement in violation
of the Lanham Act, 15 U.S.C. § 1114 (Count I), and false
designation of origin, passing off, and false advertising, in
violation of section 43(a) of the Lanham Act, 15 U.S.C. §
1125(a) (Count II).  Plaintiff seeks a permanent injunction on
Defendants' use of the mark at issue, as well as compensatory
damages, treble damages, disgorgement of profits, and costs and
attorneys' fees.  Defendants counterclaim, alleging trademark

1

infringement, unfair competition, passing off, and false advertising, in violation of 15 U.S.C. § 1125(a) (Count I of Defendants' Counterclaim), and cancellation of trademark for invalid registration, in violation of 15 U.S.C. § 1119 (Count II of Defendants' Counterclaim).  In addition to cancellation, Defendants seek a permanent injunction on Plaintiff's use of the mark at issue, as well as compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

After reviewing and considering the relevant evidence, including exhibits and witness testimony at trial, the Court, for the reasons set forth below, finds in favor of Defendants, and makes the following findings of fact and conclusions of law.

## I.   Findings of Fact

<u>The Parties and the Business</u>

1.   Plaintiff US Gates International, LLC ("UGI"), is a Maryland limited liability company with its principal place of business at 20407 Cabana Drive, Germantown, Maryland.  (Stip.[1] ¶ 1.)

2.   Since 2006, UGI has been involved in the travel-agent business, brokering hotel accommodations, car rentals and airline tickets.  (Alashi at 21:5-10, Sept. 14, 2010.)  Relevant here, UGI "does Hajj and Umrah business," *i.e.*, it provides travel services for U.S. Muslims traveling on pilgrimages to Mecca and Medina during the Hajj and Umrah pilgrimage season,

---

[1] The parties' Stipulated Facts [Dkt. 47] will be referred to as "Stip."

including arranging for the issuance of travel visas by the Saudi Arabian government to the pilgrims.  (Alashi at 21:8-9, 40:3-6, Sept. 14, 2010.)

3.    Taha Alashi is the sole owner and managing member of UGI.  (Stip. ¶ 1; Alashi at 20:23, Sept. 14, 2010.)

4.    Defendant Light Star Travel Agency, Inc. ("LSTAI"), is a Virginia corporation with its principal place of business at 5040 Cliffhaven Drive, Annandale, Virginia.  (Stip. ¶ 2.)

5.    Like UGI, LSTAI is in the business of providing travel and visa services for U.S. Muslims traveling on pilgrimages to Mecca and Medina during the Hajj and Umrah pilgrimage seasons.  (M. Mushtaha at 172:12-17, Sept. 15, 2010.)

6.    Defendant Fawaz Mushtaha ("F. Mushtaha") incorporated LSTAI in 1993.  (Stip. ¶ 5.)

7.    F. Mushtaha operated LSTAI from 1993 until 2004. (M. Mushtaha at 173:13-15, Sept. 15, 2010.)

8.    F. Mushtaha has lived in Saudi Arabia since 2004 and presently resides in Jeddah, Saudi Arabia.  (M. Mushtaha at 172:18-24, Sept. 15, 2010; Stip. ¶ 3.)

9.    Defendant Musab Mushtaha ("M. Mushtaha") is a resident of the Commonwealth of Virginia, living at 5040 Cliffhaven Drive, Annandale, Virginia.  (Stip. ¶ 4.)  M.

Mushtaha is F. Mushtaha's son.  (M. Mushtaha at 172:4-5, Sept. 15, 2010.)

10.  M. Mushtaha began working with his father's business in 2007 and has been the President of LSTAI since April 2008.  (M. Mushtaha at 174:3-6, 156:6, Sept. 15, 2010; Stip. ¶ 4.)

11.  Since April 2008, Aber Abdelellah, M. Mushtaha's mother (M. Mushtaha at 176:8-9, 14-17, Sept. 15, 2010), has been Vice President of LSTAI (D. Ex.[2] 3), and Mohammed Abdelilah, a friend of F. Mushtaha (M. Abdelilah at 208:9-13, Sept. 15, 2010), has been Treasurer of LSTAI (M. Mushtaha at 176:14-17, Sept. 15, 2010; D. Ex. 3).

12.  F. Mushtaha and Ms. Abdelellah are the sole owners of the stock of LSTAI.  (M. Mushtaha at 199:15-16, Sept. 15, 2010; Affi. F. Mushtaha ¶ 4.)

<u>The Mark</u>

13.  In organizing LSTAI, F. Mushtaha developed the logo described as a "shadow star" followed by the words "Light Star Travel" (the "Mark").  (Stip. 6.)

14.  F. Mushtaha operated LSTAI using the Mark from 1993 until 2004, when he moved to Saudi Arabia.  (M. Mushtaha at 173:25-174:2, Sept. 15, 2010; Alashi at 89:5-7, Sept. 14, 2010.)

---

[2] Defendants' trial exhibits will be referred to as "D. Ex.," and Plaintiff's trial exhibits will be referred to as "P. Ex."

15.   LSTAI was inactive for the two-year period from 2005 to 2006, during which time it did not conduct business using the Mark.  (M. Mushtaha at 194:10-13, Sept. 15, 2010.) LSTAI has again conducted business using the mark since 2007. (Alashi at 48:11-18, Sept. 14, 2010.)

16.   Mr. Alashi knew LSTAI owned and used the Mark. (Alashi at 89:5-13, Sept. 14, 2010.)

17.   On April 23, 2008, Mr. Alashi, on behalf of UGI, filed an application with the United States Patent and Trademark Office (the "USPTO") for a service mark for the Mark.  (Stip. ¶ 7; P. Ex. 47.)

18.   On June 23, 2009, the USPTO issued a trademark registration number 3,641,992 to UGI for the Mark.  (Stip. ¶ 8; P. Ex. 47-48.)

19.   None of the defendants were aware of Mr. Alashi's registration, and they have since filed with the USPTO a petition to cancel the registration.  (M. Mushtaha at 185:11-186:8, Sept. 15, 2010; Abdelilah at 220:20-23, Sept. 15, 2010.)

20.   UGI has used the Mark in its business since 2007 and conducts business under the trade-name "Light Star Travel." (Alashi at 20:23-24, Sept. 14, 2010; P. Exs. 11, 37.)

21.   UGI uses the mark on its website (Alashi at 53:12-15, Sept. 14, 2010.), on Mr. Alashi's business cards, and on its letterhead (Alashi at 55:14-58:24, Sept. 14, 2010; P. Ex.

20, 52) and has used materials reflecting the Mark in conducting

its business, including in communications with the Minister of

Hajj and the Saudi Arabian Embassy (Alashi at 57:8-10, Sept. 14,

2010).

22.  LSTAI uses the Mark in its business, including on

its website, on business cards, and on letterhead.  (M. Mushtaha

at 168:10-169:16, Sept. 15, 2010; P. Ex. 49-50, D. Ex. 11.)

<u>The Business Arrangement</u>

23.  Visas are awarded to travel-agents by the

Minister of Hajj, and the agents then provide those visas to

their customers.  (Alashi at 40:2-6, Sept. 14, 2010.)

24.  To be granted visas, an agent must be registered

with the Minister of Hajj as an organizer, and must receive an

"organizer card."  (Alashi at 44:12-14, Sept. 14, 2010.)

25.  At the time Mr. Alashi and F. Mushtaha began

discussing entering into a business relationship, LSTAI held 556

visas.  (Alashi at 24:18-19, Sept. 14, 2010.)

26.  F. Mushtaha intended to combine LSTAI with two

other companies to obtain capacity for 1198 visas.  (Alashi at

24:20-21, 87:6-12, Sept. 14, 2010.)

27.  LSTAI currently has access to 1198 visas and has

had access to these visas since at least February 2008.  (Alashi

at 87:13-19, 93:1-9, Sept. 14, 2010.)

28.   LSTAI's only assets are its visas, its goodwill, and the Mark.  (Alashi at 25:18-21, Sept. 14, 2010.)

29.   After leaving the United States, F. Mushtaha began attempting to sell LSTAI and discussed such a sale with Kamal Ahmed.  (Ahmed at 138:21-139:4, Sept. 15, 2010.)  Mr. Ahmed declined to purchase LSTAI.  (Ahmed at 139:5, Sept. 15, 2010.)

30.   Beginning in 2006, Mr. Alashi and M. Mushtaha entered into negotiations regarding the transfer of LSTAI to UGI.  (Alashi at 22:6-11, Sept. 14, 2010.)

31.   The negotiations occurred in 2006 and 2007, initially by phone and later in meetings in Saudi Arabia. (Alashi at 22:11-13, Sept. 14, 2010.)

32.   The negotiations resulted in a business association between Mr. Alashi and LSTAI, as Mr. Alashi began working with LSTAI in 2007 and reinstated the business with the Virginia State Corporation Commission.  (Alashi at 87:25-88:1, Sept. 14, 2010; P. Ex. 11.)

33.   Mr. Alashi worked with F. Mushtaha in the 2007 and 2008 Hajj seasons.  (Alashi at 89:14-18, Sept. 14, 2010.)

34.   Mr. Alashi was installed as President of LSTAI in 2007.  (M. Mushtaha at 175:3-17, Sept. 15, 2010.)

35.   Mr. Alashi and M. Mushtaha executed an International Airlines Travel Agent Network ("IATA") "Travel

Sales Intermediary (TSI) Joint Notice of Change Form" (the "IATA Form") in October 2007, which notifies IATA of changes of ownership of IATA accredited entities.  (P. Ex. 36, D. Ex. 29.)

36.  The IATA Form shows Mr. Alashi as the new, 100-percent owner of LSTAI, as transferred from F. Mushtaha, Ms. Abdelellah, and M. Mushtaha, as 50 percent, 25 percent, and 25 percent owners, respectively.  *Id.*  At Mr. Alashi's request, M. Mushtaha wrote F. Mushtaha and Ms. Abdelellah's names in the "Old (Former) Ownership" field.  (M. Mushtaha at 181:10-12, Sept. 15, 2010.)  Mr. Alashi then added M. Mushtaha's name to that field and filled in the percentages in the "[Percent] Owned" boxes.  (M. Mushtaha at 181:13-25, Sept. 15, 2010.)

37.  M. Mushtaha does not own any shares of LSTAI. (M. Mushtaha at 199:15-16, 200:20-21, Sept. 15, 2010.)

38.  When he signed the IATA Form, M. Mushtaha did not have authority to transfer the ownership of LSTAI.  (M. Mushtaha at 183:7-9, Sept. 15, 2010.)  At the time of the IATA Form, M. Mushtaha was the general manager of LSTAI.  (M. Mushtaha at 183:11-20, Sept. 15, 2010.)

39.  The IATA Form shows LSTAI'S "IATA Numeric Code" as "49-5 4229 0."  (P. Ex. 36, D. Ex. 29.)  LSTAI continues to use this IATA code, and has done so since 1993.  (M. Mushtaha at 180:18-24, Sept. 15, 2010; D. Ex. 10.)

40.   A dispute arose between Mr. Alashi and LSTAI regarding that company's finances, ultimately resulting in his removal as President in April of 2008.   (M. Mushtaha at 176:1-4, 177:19-23, Sept. 15, 2010; D. Ex. 3.)

41.   Beginning in January of 2008, Mr. Alashi and F. Mushtaha discussed the terms of a business arrangement.   (D. Exs. 16-19, 21-22, 24.)

42.   After these negotiations, Mr. Alashi came to an agreement with F. Mushtaha and Mr. Abdelilah, the terms of which were reflected in a fully executed agreement, dated July 29, 2008 (the "July 2008 Agreement").   (Alashi at 100:7-14, Sept. 14, 2010; P. Ex. 28.)

43.   The July 2008 Agreement states that it is between "the mentioned parties, Musab, the owner of Light Star Travel Agency, Inc. [sic] and Taha Alashi owner of US GATES INT'L LLC (UGI) d/b/a (Doing Business As) Light Star Travel [sic] the agreement is as follows" and contains certain agreements concerning the business.   (P. Ex. 28.)

44.   The July 2008 Agreement is signed by F. Mushtaha, Mr. Alashi, and Mr. Abdelilah.   *Id*.

45.   The July 2008 Agreement provides, *inter alia*, that "Musab [Mushtaha] (light [sic] Star Travel Agency Inc.), will provide US GATES INT'L (Taha [Alashi]) and Mohammed Abdelilah with 200 Hajj packages at the agreed cost between the

parties selling cost.  No VISA charges shall be added to the 200 packages." *Id.*  "Any Hajj packages or Visa provided by Light Star Travel Agency Inc., to his [sic] throughout the rest of the country, Taha [Alashi] and Mohammed [Abdelilah] would not acquire any benefits from it unless they have been involved in it." *Id.*  "Light Star Travel Agency Inc. has the right to choose the organizer for the hajj [sic] business or add extra company [sic] to its organizer permit without permition [sic] from Taha Alashi or any representative of us gates [sic] and will cover all the expenses." *Id.*

46.  The July 2008 Agreement goes on to state that "US GATES INT'L LLC – d/b/a Light Star Travel and Taha [Alashi] will not be held responsible for any penalty, charge, damage, taxes, liabilities or lawsuit held against Light Star Travel Agency Inc [sic], US Gates Taha [Alashi], Mohammed [Abdelilah] will be responsible for their own packages only." *Id.*  "We US GATES INT'L LLC – D/B/A Light Star Travel has [sic] separate entity than Light Star Travel Agency Inc, [sic]" *Id.*

47.  A dispute arose between LSTAI and UGI as to who would distribute the 2009 Hajj visas.  (M. Mushtaha at 188:20-23, Sept. 15, 2010.)

48.  This dispute resulted in a meeting at the Saudi Arabian Embassy in Washington, DC, in October of 2009, the purpose of which was to determine the owner of LSTAI and thereby

to whom the authority to issue the visas would be given.  (M. Mushtaha at 188:24-191:5, Sept. 15, 2010.)

49.  In attendance at that meeting were Mr. Alashi, M. Mushtaha, and a representative from the Saudi Arabian Embassy. (Alashi at 116:1-23, Sept. 14, 2010.)  Mr. Abdelilah initially attended the meeting but was asked to leave.  (Alashi at 116:12-15, Sept. 14, 2010.)

50.  In that meeting, when asked if LSTAI was his company, Mr. Alashi answered "no."  (Alashi at 117:24-119:15, Sept. 14, 2010; Alashi Dep. 78:21-23, July 7, 2010)

51.  As a result of that meeting, the right to issue the 1198 visas was given to LSTAI.  (Alashi at 119:23-25, Sept. 14, 2010; M. Mushtaha at 190:23-191:2, Sept. 15, 2010.)

52.  In a meeting immediately before the meeting at the Saudi Arabian Embassy, Mr. Abdelilah had a discussion with Mr. Alashi in which Mr. Abdelilah asked Mr. Alashi to settle the dispute by admitting to the Saudi Arabian official that LSTAI did not belong to Mr. Alashi.  (Abdelilah at 216:2-5, Sept. 15, 2010.)

53.  In that meeting, Mr. Alashi told Mr. Abdelilah that he never owned LSTAI.  (Abdelilah at 229:14-17, Sept. 15, 2010.)

54.  LSTAI has not appointed Mr. Alashi or UGI as organizer for its 1198 visas for the 2010 Hajj season.  (M. Mushtaha at 206:15-207:1, Sept. 15, 2010.)

55.  The stock of LSTAI has never been transferred to Mr. Alashi.  (Alashi at 103:13-14, 115:15-21; Alashi Dep. 16:9-14, July 7, 2010.)

### III.  Analysis

The Court first addresses the merits of Plaintiff's claims of trademark infringement (Count I) and false designation of origin, passing off, and false advertising (Count II).  The Court will then address the merits of Defendants' counterclaims for trademark infringement, unfair competition, passing off, and false advertising (Count I of Defendants' Counterclaim) and cancellation of trademark for invalid registration (Count II of Defendants' Counterclaim).  It is worth noting from the outset that though this case is one for trademark infringement, the dispute, at bottom, is one over the transfer of a business, specifically a Virginia corporation.  Both parties concede that they each use the identical mark in commerce--what they contest is ownership.

### A.  Plaintiff's Count I: Trademark Infringement

Plaintiff alleges that Defendants have used the Mark, which is owned by Plaintiff, thereby infringing on Plaintiff's trademark.  (Complaint ¶¶ 20, 24, 26.)  Defendants submit that

Defendant LSTAI is the owner of the Mark and, accordingly, they have not infringed on Plaintiff's trademark. (Answer ¶¶ 5, 7, 26.)

To show infringement under the Lanham Act, a plaintiff must demonstrate: (1) ownership of a (2) valid and protectable mark and (3) a likelihood of confusion stemming from an infringer's use of a colorable imitation of the trademark. *See Lone Star Steakhouse & Saloon Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). Here, only the first element is at issue.

With respect to the validity and protectability of the Mark, the Court finds that the Mark is valid and protectable. The parties do not dispute the validity and protectability of the Mark and stipulate that the USPTO issued trademark registration number 3,641,992 to UGI for the Mark. Section 1115(a) states, *inter alia*, that the registration of a mark on the Principal Register constitutes *prima facie* evidence of "the validity of the registered mark." 15 U.S.C. § 1115(a). Neither party has contested the validity of the Mark itself. Additionally, the Court finds that the Mark merits protection due to its distinctiveness.[3] *See Sara Lee Corp. v. Kayser-Roth*

---

[3] Trademarks fall into one of four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *see Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 538-39 (4th Cir. 2004). Generic marks do not merit any trademark protection, whereas arbitrary, fanciful, and suggestive marks merit the highest protection. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996); *see also U.S. Search, LLC v. US Search.com*

*Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) (arbitrary, fanciful, and suggestive marks merit the highest protection); *see also U.S. Search, LLC v. US Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).

With respect to the likelihood of confusion, it is clear that both parties are using identical trademarks in trading in identical services, *i.e.*, the logo described as a "shadow star" followed by the words "Light Star Travel" and the Hajj pilgrimage business for U.S. Muslims.  The Court finds this sufficient to establish that a likelihood of confusion exists according to the factors outlined by the Fourth Circuit in the seminal trademark decision *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984), with the addition of two factors contained in *Sara Lee Corp. v. Kayser-Roth Corp.*, 81

---

*Inc.*, 300 F.3d 517, 523 (4th Cir. 2002).  Descriptive marks are protected only if they have acquired a "secondary meaning" – *i.e.*, when in the mind of the public the descriptive term identifies the source of a product rather than the product itself.  *See Retail Servs.*, 364 F.3d at 538-39 (citations and quotations omitted).  Fanciful marks are usually nonsense words expressly coined to serve as a trademark, while arbitrary marks "consist of recognizable words used in connection with products" with which they are otherwise un-associated.  *Retail Servs.*, 375 F.3d at 539.  Arbitrary marks, which are also inherently distinctive, "typically involve common words that have no connection with the actual product, as 'they do not suggest or describe any quality, ingredient, or characteristic,' so the mark can be viewed as 'arbitrarily assigned.'"  *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 394 (4th Cir. 2009) (citing *Sara Lee Corp.*, 81 F.3d at 464); *see also Sara Lee Corp.*, 81 F.3d at 464 (noting that "Camel® cigarettes" and "Apple® computers" are arbitrary marks).  Suggestive marks, on the other hand, are inherently distinctive.  They "connote, without describing, some quality, ingredient, or characteristic of the product . . . . they conjure images of the associated products.  Coppertone®, Orange Crush®, and Playboy® are good examples of suggestive marks."  *Sara Lee Corp.*, 81 F.3d at 464.  "[S]uggestive marks are inherently distinctive and, like arbitrary or fanciful marks, qualify for registration without any showing of 'secondary meaning.'"  *Retail Servs.*, 364 F.3d at 539 (citation omitted).

F.3d 455, 463-64 (4th Cir. 1996).  *See George & Co., LLC v. Imagination Entm't Ltd.* 575 F.3d 383, 393 (4th Cir. 2009).[4]  The factors are not all relevant in every case and do not have to be weighted equally.  *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog LLC*, 507 F.3d 252, 259-60 (4th Cir. 2007).  The second and third *Pizzeria Uno* factors, "(b) the similarity of the two marks[] [and] (c) the similarity of the goods/services the marks identify" are determinative for purposes of this case. *Pizzeria Uno Corp.*, 747 F.2d at 1527.  There is no dispute that the parties both use the Mark in conducting identical business. The Court, then, will turn to the ownership element.

Plaintiff claims ownership of the Mark through its acquisition of 100 percent of the stock of LSTAI.  (Complaint § 6).  Plaintiff concedes the alleged agreement to acquire the stock of LSTAI was oral.[5]  (Alashi at 27:18-19, Sept. 14, 2010.)

---

[4] The factors are: "(a) the strength or distinctiveness of the mark; (b) the similarity of the two marks; (c) the similarity of the goods/services the marks identify; (d) the similarity of the facilities the two parties use in their businesses; (e) the similarity of the advertising used by the two parties; (f) the defendant's intent; [and] (g) actual confusion." *Pizzeria Uno Corp.*, 747 F.2d at 1527.  The two additional factors looked to in the Fourth Circuit are "the quality of the defendant's product" and "the sophistication of the consuming public." *George & Co.*, 575 F.3d at 393.
[5] The parties have stipulated that there is no statute of frauds issue with respect to the alleged agreement.  (Plaintiff's Opening Statement at 13:2-3, Sept. 14, 2010; Defendants' Opening Statement at 18:24-25, Sept. 14, 2010.) The Court finds that to the extent there would be any statute of frauds issue, the alleged agreement would be removed from the statute, as it would be an agreement to be performed within one year.  Va. Code. Ann. § 11.2(8). The parties additionally stipulate that the alleged agreement should be governed by Virginia state law.  The Court will not disturb their decision in this respect, as in Virginia parties are entitled to specify the substantive law that will govern their contractual terms. *See Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 80, 645 S.E.2d 436, 438 (2007).

An entity may acquire the shares of a Virginia corporation "in exchange for shares[,] . . . cash, other property or any combination of the foregoing, pursuant to a plan of share exchange."  Va. Code Ann. § 13.1-717(A)(1).  For a Virginia corporation that "is a party to [] share exchange[,] . . . . [t]he plan of [] share exchange shall be adopted by the board of directors," and "after adopting the plan of [] share exchange the board of directors shall submit the plan to the shareholders for their approval."  Va. Code Ann. § 13.1-718(A)(1), (2).  Here, there is no evidence of any plan of share exchange, its submission to or adoption by the board, its submission to the shareholders for approval, or its approval thereby.  The record contains no board resolution or stock transfer or any other corporate transaction record authorizing the transfer of LSTAI shares.  Mr. Alashi, on behalf of Plaintiff, has never received the LSTAI shares.  The Court finds that at no time were the shares of corporate stock of LSTAI transferred to Mr. Alashi or Plaintiff.

Even setting aside the corporate formalities required of Virginia stock corporations, the Court finds three pieces of evidence offered by the parties relevant in addressing any agreement to transfer the shares of LSTAI: the July 2008 Agreement, the 2009 meeting at the Saudi Arabian Embassy, and the IATA Form.  The Court finds that these, too, illustrate that

at no time were LSTAI's shares transferred.  Additionally, Mr.
Alashi was impeached with his deposition testimony that was put
on the record by Defendants' counsel, in which he stated that
when asked if the corporation was his company, he answered "no."

First, the July 2008 Agreement does not itself
transfer LSTAI's shares.  The agreement memorializes a business
arrangement among Mr. Alashi, F. Mushtaha, and Mr. Abdelilah,
each of whom signed the agreement, regarding the allocation of
Hajj travel packages and visas among them, but contains no
provisions regarding the transfer of LSTAI.  The July 2008
Agreement states that it is between M. Mushtaha, "the owner of
[LSTAI]" and Mr. Alashi, the "owner of [UGI]."  (P. Ex. 28.)
The agreement provides that Plaintiff receives no benefits for
any visas provided by LSTAI unless Plaintiff has been involved
in their sale and that LSTAI may choose the organizer for a Hajj
season without permission from Plaintiff.  *Id*.  These terms
indicate that LSTAI and Plaintiff were to operate as separate
entities.  Moreover, the July 2008 Agreement states that
Plaintiff will not be liable for any claim against LSTAI and
expressly states that Plaintiff and LSTAI are separate entities.
(P. Ex. 28.)  These terms, particularly when taken with the
express, though incorrect, acknowledgement that M. Mushtaha
owned LSTAI, lead the Court to find that this evidence favors
Defendants' argument that no transfer of LSTAI shares occurred.

Next, the October 2009 meeting at the Saudi Arabian Embassy is further evidence regarding whether LSTAI's shares were transferred.  Immediately prior to that meeting, the parties met with Mr. Abdelilah, who testified that at that meeting Mr. Alashi told him that Mr. Alashi never owned LSTAI; this Court finds this testimony to be credible.  Additionally, as a result of the meeting in the embassy, LSTAI and not Plaintiff was awarded the right to issue all 1198 visas owned by LSTAI.  This, when coupled with Mr. Abdelilah's testimony, which the Court finds to be credible, weighs against Plaintiff's claim of ownership.

Last, the IATA Form itself is not a document transferring LSTAI's shares.  It is a registration with a professional trade organization, assigning that organization's identification number to a particular entity.  Moreover, M. Mushtaha testified that he did not have authority to transfer all of LSTAI's stock when he signed the IATA Form and that at that time he was only LSTAI's general manager, and not an officer or director.  The Court finds M. Mushtaha's testimony truthful and persuasive in this respect.  Moreover, the breakdown of LSTAI's ownership, showing M. Mushtaha as a 25 percent owner, is factually incorrect, which the Court finds to impact the credibility of the form as evidence of the transfer

of LSTAI's shares.  As evidence of transfer of the ownership of
LSTAI, the Court finds the IATA Form unavailing.

For these reasons, the Court finds that there was no
transfer of LSTAI'S shares to Plaintiff.  As Plaintiff claims
ownership of the Mark as a result of ownership of all of LSTAI's
corporate stock, accordingly, Plaintiff never acquired ownership
of the Mark.  Because Plaintiff is not the owner of the Mark, it
cannot satisfy the elements of a trademark infringement claim.

B.   <u>Plaintiff's Count II: Unfair Competition, False
Designation of Origin, Passing Off, and False
Advertising</u>

Plaintiff alleges unfair competition in violation of
15 U.S.C. § 1125(a).  (Complaint ¶ 1.)  The first element of the
cause of action for unfair competition, whether under the Lanham
Act or Virginia law, is the same as the first element in a
trademark infringement claim--*i.e.*, that the defendant used the
plaintiff's mark.  *See People for the Ethical Treatment of
Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001); *see also
Lone Star Steakhouse & Saloon Inc.*, 43 F.3d at 930 n.10 ("The
test for trademark infringement and unfair competition under the
Lanham Act is essentially the same as that for common law unfair
competition under Virginia law because both address the
likelihood of confusion as to the source of the goods or
services involved.")  For the reasons set forth above with
respect to Plaintiff's trademark infringement claim, the Court

19

finds that Plaintiff never acquired the Mark.  Thus, Plaintiff fails to meet the first element of its unfair competition claim.

Plaintiff alleges Defendants' acts constitute false designation of origin, passing off, and false advertising in violation of 15 U.S.C. § 1125(a).  (Complaint ¶ 33.)  To prove a claim of false designation of origin, a plaintiff must show that a defendant has made a "any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services."  15 U.S.C. ¶ 1125(a).  Similarly, passing off occurs when a producer misrepresents his own services as someone else's, while "reverse passing off" occurs when a producer misrepresents someone else's services as his own. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).  Plaintiff's false designation or origin and passing off claims rest on Defendants' representations that it owned the Mark.  As set forth above, because LSTAI owns the Mark, Plaintiff's claims for false designation and passing off cannot succeed.

To succeed on a false advertising claim, a plaintiff must prove, *inter alia*, that the defendant made a material false or misleading statement of fact in an advertisement.  *See Scotts Co. v. United Indus.*, 315 F.3d 264, 272 (4th Cir. 2002).  Here, the alleged false statement of fact is Defendants'

representation that LSTAI owned the Mark.  As the Court finds

that LSTAI did not transfer ownership of the Mark, Plaintiff

cannot prove its false advertising claim.

> C.   Defendant's Counterclaim Count I: Trademark
> Infringement, Unfair Competition, Passing Off,
> and False Advertising

Defendants counterclaim for trademark infringement in

violation of 15 U.S.C. § 1125(a).  (Counterclaim ¶ 24.)  As set

forth above, to show infringement under the Lanham Act,

Defendants must demonstrate: (1) ownership of a (2) valid and

protectable mark and (3) a likelihood of confusion stemming from

an infringer's use of a colorable imitation of the trademark.

*See Lone Star Steakhouse & Saloon Inc.*, 43 F.3d at 930.  Here,

again, only the first element is at issue—the parties do not

dispute the validity and protectability of the Mark, nor do they

dispute that each parties use of the Mark is likely to cause

confusion.

At common law, trademark ownership is acquired by

actual use of the mark in a given market.  *Emergency One, Inc.*

*v. American Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th

Cir. 2003) (citing *United Drug Co. v. Theodore Rectanus Co.*, 248

U.S. 90, 97-98 (1918)); *see generally* 2 McCarthy on Trademarks

and Unfair Competition § 16:1 (4th ed. updated September 2010).

When rights are asserted in an unregistered service mark,

"priority is determined by the first actual use of [the] mark in

a genuine commercial transaction."  *Emergency One, Inc. v. Am.*

*Fire Eagle Engine, Co.*, 332 F.3d 264, 267 (4h Cir. 2003)
(quoting *Allard Enters., Inc. v. Advanced Programming Res.,
Inc.*, 146 F.3d 350, 358 (6th Cir. 1998)).  The parties do not
dispute that LSTAI acquired a common law trademark in the Mark
by the first actual use in the parties' market.

The parties stipulate that the USPTO issued trademark
registration number 3,641,992 to UGI for the Mark.  The Lanham
Act, in 15 U.S.C. § 1115(a) states that the registration of a
mark on the Principal Register constitutes *prima facie* evidence
of (1) "the validity of the registered mark," (2) the
"registration of the mark," (3) "the registrant's ownership of
the mark," and (4) "the registrant's exclusive right to use the
registered mark in commerce."  15 U.S.C. § 1115(a).  A party,
however, can still challenge a mark registered on the Principal
Register: registration "shall not preclude another person from
proving any legal or equitable defense or defect . . . which
might have been asserted if such mark had not been registered."
*Id*.  As discussed above, Defendants contend that because LSTAI
never transferred the Mark, Plaintiff has no claim to ownership
of the Mark and, therefore, registered a trademark that had
already been in use in commerce.  *See* 15 U.S.C. § 1052(d)
(barring registration of a mark previously used by another).
For the reasons stated above, the Court finds that Plaintiff did
not acquire ownership of the Mark, and thus Defendants have

rebutted the Section 1115(a) presumptions.  For these same reasons, the Court finds that Defendants have proven their trademark infringement counterclaim.

Defendants counterclaim for unfair competition in violation of 15 U.S.C. § 1125(a).  (Counterclaim ¶ 24.)  The test for unfair competition, whether under the Lanham Act or Virginia law, is essentially the same as that for a trademark infringement claim.  *See People for the Ethical Treatment of Animals*, 263 F.3d at 364; *see also Lone Star Steakhouse & Saloon Inc.*, 43 F.3d at 930 n.10 ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved.")  For the reasons set forth above with respect to Defendants' trademark infringement counterclaim, the Court finds that Defendants have proven their unfair competition counterclaim.

Defendants counterclaim for false designation of origin, passing off, and false advertising in violation of 15 U.S.C. § 1125(a).  (Counterclaim ¶ 24.)  To prove a claim of false designation of origin, Defendants must show that Plaintiff has made a "any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services."  15

U.S.C. ¶ 1125(a).  Similarly, passing off occurs when a producer misrepresents his own services as someone else's, while "reverse passing off" occurs when a producer misrepresents someone else's services as his own. *See Dastar Corp.*, 539 U.S. at 28 n.1.  Like Plaintiff's false designation or origin and passing off claims, Defendants' counterclaims rest on Plaintiff's admitted representations that it owned the Mark.  As set forth above, because LSTAI owns the Mark, Defendants have succeeded on these claims.

To succeed on its false advertising counterclaim, the Defendants must prove that:

> (1) the [Plaintiff] made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the [Plaintiff] placed the false or misleading statement in interstate commerce; and (5) the [Defendants] ha[ve] been or [are] likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with [LSTAI's] products.

*See Scotts Co.*, 315 F.3d at 272 (internal citations omitted). Here, Plaintiff made the false statement that it owned the Mark in interstate commerce.  The false statement was material and had tendency to deceive.  As to the likelihood of injury, the Fourth Circuit has recognized that "[i]n Lanham Act cases involving trademark infringement, a presumption of irreparable

injury is generally applied once the plaintiff has demonstrated a likelihood of confusion[.]" *Id.* at 273 (although the Fourth Circuit has not explicitly affirmed this approach, it does acknowledge that district courts in this circuit have applied this test); *see, e.g.*, *PBM Products, LLC v. Mead Johnson Nutrition Co.*, No. 3:09-CV-269, 2009 WL 1684471, at *5 (E.D. Va. May 7, 2009) ("This Court has previously stated that the irreparable harm prong could be satisfied upon 'a demonstration that the competitor's advertising tends to mislead consumers.'" (quoting *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 861 (E.D. Va. 1998)).  Applying this presumption, and as the Court finds that Plaintiff did not own the Mark, Defendants have proven their false advertising counterclaim.

> D.    Defendant's Counterclaim Count II: Cancellation of Registration

Count II of Defendants' Counterclaim requests that the Court cancel Plaintiff's registration of the Mark with the USPTO. (Counterclaim at 5-6.)  "In any action involving a registered mark the court may . . . order the cancelation of [the] registration[]."  15 U.S.C. § 1119.  "Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby."  15 U.S.C. § 1119.

Valid ground for cancellation of a mark registered less than five years is "any ground that would have prevented registration in the first place." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945-46 (Fed. Cir. 2000). 5 McCarthy on Trademarks and Unfair Competition § 20:52 (4th ed. updated September 2010); 74 Am. Jur. 2d *Trademarks* § 78 (2010).

Among these grounds is that the registered mark "[c]onsists of or comprises a mark which so resembles a . . . mark . . . previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion." 15 U.S.C. § 1052(d); *see also Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 850 (Fed. Cir. 1992) ("Likelihood of confusion is a ground for opposition to trademark or service mark registration, and for cancellation of registration if raised within five years after registration."). As discussed above, LSTAI did not transfer the Mark to Plaintiff. Thus, Plaintiff registered a mark that was exactly a mark previously used by another, namely LSTAI. The Court, therefore, grants Count II of Defendants' Counterclaim, for cancellation of the registration for the Mark, issued by the USPTO to UGI on June 23, 2009, number 3,641,992.

     E.   <u>Defendants' Relief</u>

In addition to cancellation of Plaintiff's registration of the Mark, Defendants' Counterclaim seeks a permanent injunction on Plaintiff's use of the mark at issue, as well as compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.[6]

With respect to Defendants' request for damages in their Counterclaim, Defendants' counsel conceded at trial that Defendants no longer seek damages.  To the extent Defendants continue to seek damages, though this Court presumes injury in evaluating the merits of Defendants' counterclaims, "damages are presumed only as to causation; the extent of money damages is a separate matter that must have evidentiary support." *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 182 F. App'x 267, 273 (4th Cir. 2006).  The Court sees no support in the record as to the extent of money damages, and finds Defendants have not proven them.  Accordingly, any request for damages will be denied.[7]

With respect to Defendants' request for a permanent injunction, the Supreme Court has established a four-factor test that a plaintiff must satisfy before a court may grant a permanent injunction.  Specifically, a plaintiff must show:

---

[6] As stated in open court and set forth in the Order accompanying this Memorandum Opinion, the Court will address the issue of attorneys' fees and costs after the parties have submitted briefing with respect to that issue.
[7] Defendants seek some $10,000 they allege was given to Mr. Alashi by F. Mushtaha for certain expenses and has not been returned.  (M. Mushtaha at 203:10-17, Sept. 15, 2010.)  This sum is unrelated to any trademark infringement or other trademark claim, and accordingly is outside of the scope of Defendants' Counterclaims.

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as
> monetary damages, are inadequate to compensate
> for that injury; (3) that, considering the
> balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be
> disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Id.* As addressed above, because the Court finds that Defendants have established the likelihood of confusion, there arises a presumption of irreparable injury, which went unrebutted by Plaintiff. Money damages alone would not fully compensate for the injury to Defendants' reputation and goodwill. Balancing the hardships between the parties, a remedy in equity is warranted, and the public interest would not be disserved by a permanent injunction.

### III.  Conclusions of Law

1.   This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b).

2.   The Court finds in favor of Defendants as to Plaintiff's claim for trademark infringement (Count I), because Plaintiff failed to prove ownership of the Mark.

3.   The Court finds in favor of Defendants as to Plaintiff's claims for false designation of origin, passing off, and false advertising (Count II) for that same reason.

28

4.    The Court finds in favor of Defendants as to their counterclaim for trademark infringement, unfair competition, passing off, and false advertising (Count I of Defendants' Counterclaim) and therefore permanently enjoins Plaintiff, its owner, and its agents from using the Mark in any capacity.

5.    The Court finds in favor of Defendants as to their counterclaim for cancellation of trademark for invalid registration (Count II of Defendants' Counterclaim) and therefore will order cancellation of the registration for the Mark issued by the USPTO to UGI on June 23, 2009, Registration Number 3,641,992.

An appropriate Order will issue.


_____
/s/
November 8, 2010              James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE